RICHARD WARE LEVITT*
rlevitt@landklaw.com

NICHOLAS G. KAIZER*
nkaizer@landklaw.com

YVONNE SHIVERS
yshivers@landklaw.com
SENIOR APPELLATE COUNSEL

DEAN SOLOMON
dsolomon@landklaw.com

EMILY GOLUB
egolub@landklaw.com

° ADMITTED IN N.Y., FLA., AND D.C.

LEVITT & KAIZER
ATTORNEYS AT LAW
40 FULTON STREET
23rd FLOOR
NEW YORK, NEW YORK 10038-5077

TELEPHONE
(212) 480-4000

FACSIMILE
(212) 480-4444

June 10, 2013

Hon. Sterling Johnson
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

                Re: United States v. Alexander Fishenko, et al.
                    12-cr-626 (SJ)

Dear Judge Johnson:

      Pursuant to Fed. R. Crim. P. 59, we respectfully seek review of Magistrate Judge Lois Bloom's decision of May 30, 2013 denying Mr. Alexander Fishenko's application for bail. *See United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985) ("[A] district court should fully reconsider a magistrate's denial of bail and in ruling on a motion for revocation or amendment of a detention order should not simply defer to the judgment of the magistrate, but reach its own independent conclusion.").

      A copy of the transcript of the proceedings before Judge Bloom is annexed hereto as **Exhibit 1**. Mr. Fishenko's letter in support of bail with exhibits is annexed hereto as **Exhibit 2**. The government's opposition to bail with exhibits is annexed hereto as **Exhibit 3**. Mr. Fishenko's reply is annexed hereto as **Exhibit 4**.

      As this Court is aware, the instant indictment alleges that Mr. Fishenko, through his company, ARC Electronics, Inc. ("ARC"), exported various electronic components to Russia without required licenses. The above-referenced exhibits clearly set forth the party's principal positions for and against bail and we therefore do not repeat them in this cover letter, except to address certain of the arguments made by the government at the hearing before Judge Bloom. Additionally, we emphasize the essential facts relevant to bail, recognizing that the government alleges only that Mr. Fishenko is a flight risk, not that he poses a danger to the community: Mr. Fishenko and his wife Viktoria came to this country nearly 20 years ago to escape Viktoria's religious persecution. They long ago became United States

LEVITT & KAIZER

Hon. Sterling Johnson
June 10, 2013
Page 2

citizens and have now lived for many years in the Houston community with their seven-year-old son, Nicholas. Although the government initially described Mr. Fishenko's business as one largely driven by illegal exports to the Russian military, it is now apparent (as we discuss in our papers) that but a tiny fraction of 1% of his company's sales are alleged to have been unlawful. And these sales hardly involved "sophisticated" electronic equipment as the government asserts. The instant charges do not carry a presumption against bail and all the recognized bail factors suggest that Mr. Fishenko is an excellent candidate for release. Numerous family members and friends stand ready to sign a bail bond. Mr. Fishenko has now been incarcerated for approximately eight months and, due to the complexity of the case, the volume of discovery, the failure of MDC to make required software available, and the classified nature of thousands of documents, trial undoubtedly will not occur in the foreseeable future. Thus if Mr. Fishenko is denied bail he will unnecessarily be separated from his family for an inordinate length of time and his continued incarceration will make effective trial preparation difficult if not impossible.

We additionally take this opportunity to supplement our previous papers to address certain of the arguments made by the government before Judge Bloom. In doing so we respectfully suggest that Judge Bloom erred when she applied a presumption of correctness to the decision of Magistrate Judge Hanks in Houston, Texas to deny bail. (Ex. 1 at 2-3, 10-14, 16-19, 21, 32-34, 43.) Because Mr. Fishenko was entitled to a *de novo* review of his bail application in the court where his case will be tried – the Eastern District of New York – Judge Hanks' decision was not entitled to any deference and Judge Bloom should have made an entirely independent determination of whether the government had rebutted the presumption in favor of bail. *United States v. Leon*, 766 F.2d 77, 80 (2d Cir. 1985).

Turning to the arguments the government made at the hearing before Judge Bloom in opposition to bail, we add the following:

1. <u>The assertion that Mr. Fishenko is an "agent" of the Russian government</u>. The government has repeatedly referred to Mr. Fishenko is an "agent" of the Russian government (Ex. 1 at 6-8, 21-24, 42.), and gave the Court the impression that "reading between the lines of even the translations that are given of some of the conversations, they are meaning more than he's just an agent acting on behalf." (Ex. 1 at 8.) In other words, the government absurdly left the Court with the impression that Mr. Fishenko was some type of Cold War spy. Upon further questioning at the hearing, however, the government acknowledged, "what we allege here is that he is an agent

Levitt & Kaizer

Hon. Sterling Johnson
June 10, 2013
Page 3

in the sense that he procured controlled sensitive goods for Russian military intelligence agencies." (Ex. 1 at 23.) In other words, he is not alleged to be a "spy" in any sense of the word.

2.  <u>The assertion that Mr. Fishenko sold sensitive sophisticated electronic equipment to the Russian military</u>. We have repeatedly urged that the components identified in the indictment as having been exported in alleged violation of law – including, e.g., analog to digital converters and amplifiers – are mundane electronic components that are controlled only because they are so-called "dual use" items manufactured to tolerances suitable for both military and consumer applications. The government has never contradicted this representation.

3.  <u>The assertion that Mr. Fishenko has numerous personal and business ties to Russia</u>. The government argued before Judge Bloom that Mr. Fishenko is a flight risk because he travelled frequently to Russia previous to his arrest and has business interests there. (Ex. 1 at 19, 23-25, 35, 39-42.) Russia is the natural place for Mr. Fishenko to have developed business ties because he went to school in Russia and speaks the language, but nothing about these contacts suggests he is inclined to either uproot or abandon his family – including his young son who was born here – and flee. Of course, Mr. Fishenko, his wife and child would surrender any passports as a condition of bail and agree to not apply for new passports while this case pends.

4.  <u>The assertion that Mr. Fishenko has "resources" abroad</u>. (Ex. 1 at 19, 25-27, 37-41.) The government represented to Judge Bloom that Mr. Fishenko has substantial financial resources abroad. On the contrary, as Mr. Fishenko represented to Judge Bloom, for the past 10-12 years, Mr. Fishenko's spending account in Russia generally has had less than $200 in it. (Ex. 1 at 41-43.) We annex for the Court's review (as **Exhibit 5**) available bank statements reflecting that the account referenced by the government (a Russian debit card) has a miniscule balance. In addition, the Singaporean company referenced by the government (Ex. 1 at 25, 40) with which Mr. Fishenko was affiliated has zero balances, and its accounts were closed in April of this year (*see* **Exhibit 6**); and the bank account in Russia that was opened in 2000 (Ex. 1 at 40) has a balance of only 50 rubles – about $1.50 USD (*see* **Exhibit 7**). To be blunt, the government's contention that Mr. Fishenko has substantial resources abroad is pure fantasy.

LEVITT & KAIZER

Hon. Sterling Johnson
June 10, 2013
Page 4

5. <u>The assertion that Mr. Fishenko's "dual citizenship" makes him a flight risk.</u> (Ex. 1 at 19, 27, 42.) The government claims that even if Mr. Fishenko and his wife surrendered their passports, it cannot prevent the Russian government from issuing them new travel documents. (Ex. 1 at 27.) On this theory, however, no person with dual citizenship between the United States and a Republic of the former Soviet Union would be admitted to bail. Additionally, it assumes, with neither supporting facts nor logic that the Russian consulate would risk its critical relationship with the United States to facilitate Mr. Fishenko's flight. In any event the government can monitor Mr. Fishenko's movements (using an ankle bracelet) and – should the Court deem it necessary – even monitor his non-privileged communications to assure he does not re-apply for a passport.

6. <u>The assertion that Mr. Fishenko's air travel between Houston and New York would provide opportunities for him to flee.</u> (Ex. 1 at 20-21, 37.) Unquestionably Mr. Fishenko's name is already in government computers and any effort by him to flee with a new passport would be foolhardy, to say the least, given the government's prolific use of no-fly lists and central monitoring of flight manifests. In any event, any risk of flight could be substantially mitigated by an ankle bracelet and monitoring of his non-privileged communications, along with a requirement that he notify pretrial services well in advance of any travel. If necessary (and we don't believe it is) Mr. Fishenko can rent an apartment in New York while this case is pending.

For all these reasons and those stated in our other papers, the Court should reverse Judge Bloom's order and admit Mr. Fishenko to bail upon such conditions as the Court may require. We suggest a $500,000 PRB, secured by $50,000, five co-signers, weekly in-person reporting and daily call-ins from a known and verifiable location. The court may additionally consider the use of an electronic monitoring

LEVITT & KAIZER

Hon. Sterling Johnson
June 10, 2013
Page 5

bracelet as well as government monitoring of Mr. Fishenko's non-privileged communications.

Respectfully submitted,

*/s/ Richard Levitt*

Richard Ware Levitt
LEVITT & KAIZER
40 Fulton Street, 23rd Floor
New York, NY 10038
(212) 480-4000
(212) 480-4444 (fax)